■ CHRISTOPHER SPIERER et al., Respondents, v BLOOMINGDALE'S, a Division of FEDERATED DEPARTMENT STORES, INC., et al., Appellants, et al., Defendants. [841 NYS2d 299]—

Order, Supreme Court, Bronx County (Stanley Green, J.), entered February 14, 2006, which, to the extent appealed from as limited by the briefs, denied the Bloomingdale's defendants' motion for summary judgment, unanimously reversed, on the law, without costs, summary judgment granted and the complaint dismissed as against Bloomingdale's. The Clerk is directed to enter judgment accordingly.

Plaintiffs allege injuries due to multiple chemical sensitivity (MCS) caused by a two-week exposure to bedding (mattresses and box springs) manufactured by defendant Simmons and purchased from defendant Bloomingdale's in January 1984. They commenced this action in October 1986; however, bankruptcy proceedings commenced in 1990 by Bloomingdale's parent company, Federated Department Stores, resulted in stays delaying this matter until August 2004.

This motion for summary judgment, made in October 2005, was timely, despite the filing of the note of issue and certificate of readiness in April 1995. In an August 2004 order, the motion court granted the parties additional discovery and defendant Bloomingdale's a reservation of right to move for summary judgment "within 60 days of the completion of all discovery." This order did not preclude Bloomingdale's from seeking summary judgment earlier, especially in light of the case being marked off the trial calendar in March 2005 due to outstanding discovery.

As Bloomingdale's contends, both state and federal courts have consistently determined that the cause or causes of MCS cannot be reliably established by scientific proof (*see e.g. Op-*

*penheim v United Charities of N.Y.*, 266 AD2d 116 [1999]; *Frank v State of New York*, 972 F Supp 130, 136-137 [ND NY 1997]). This is borne out in the record evidence before us which, with one exception, was based upon environmental and medical tests undertaken at the behest of plaintiffs. Aside from being inconsistent in determining the chemical compounds to which plaintiffs might have been exposed, if any, and failing to address other potential causes of plaintiffs' symptoms, the evidence lacks scientific support for a causal link between those chemicals found and MCS, a critical element of any toxic tort (*see Parker v Mobil Oil Corp.*, 7 NY3d 434, 448 [2006]; *Heckstall v Pincus*, 19 AD3d 203 [2005]). Indeed, the record demonstrates that Bloomingdale's satisfied its evidentiary burden on summary judgment by, inter alia, submitting two of plaintiffs' expert reports, obtained by discovery, that though unsworn, constitute admissible prima facie proof that plaintiffs could not demonstrate the bedding was defective or the alleged defect was a substantial cause of their injuries (*see Fragale v Geiger*, 288 AD2d 431 [2001]; *Arbour v Commercial Life Ins. Co.*, 240 AD2d 1001, 1002 [1997]; *Torres v Micheletti*, 208 AD2d 519 [1994]). Plaintiffs, however, failed to submit admissible proof raising triable issues of fact as to Bloomingdale's contentions.

Plaintiffs' reports supporting Bloomingdale's position were the Clayton Environmental Consultants' report and the American Standards and Testing Bureau (ASTB) report. The Clayton report, based on tests of air and bedding samples taken from plaintiffs' apartment in February and April 1984, found that the results were inconclusive as to a cause of plaintiffs' symptoms, that numerous compounds might have caused plaintiffs' symptoms, that the comprehensive testing necessary to test for all such compounds would be a "gargantuan task," that "unless some additional information is obtained that might provide insight into the problem, any further [testing would] result in . . . inconclusive findings," and that a review of scientific literature and questioning of scientists from the National Institute for Occupational Safety and Health did not reveal any previous complaints regarding adverse health effects involving exposure to polyurethane foam bedding.

In May 1986, ASTB tested bedding and reviewed the Clayton report and a February 1985 report by New York Testing Laboratories (NYTL). ASTB's first report failed to find the hydrochloric acid vapors found by NYTL or other substances that might have caused the allergic reactions alleged, questioned NYTL's results, and noted the wide range of allergic reactions among individuals and the difficulty of ascribing them to a specific al-

lergen. It also identified a crystal deposit, allegedly collected from plaintiffs' bedroom wall by Christopher Spierer, as Epsom salts, a harmless bath salt, that was "totally alien to the bedding products in question." A second ASTB report three months later found hexachlorobenzene, but was inconclusive because it lacked the data for a quantitative assessment of plaintiffs' exposure and because the testing did "not give the hexachlorobenzene concentration in the offending component(s) and does not define the precise character and severity of the exposure."

Plaintiffs' submissions failed to raise any triable issue of material fact. For example, plaintiffs' medical reports were unsworn—primarily based on plaintiffs' speculative statements—and conclusory, and thus not in admissible form. Although these reports showed some evidence of injury to plaintiffs, they demonstrated no defect in the bedding, did not eliminate other potential causes of plaintiffs' injuries, and failed to rebut Bloomingdale's proof that no other customer (or Simmons customer or employee) had ever complained of a similar reaction to the products. Professor Breysse's report, which consisted of a review of plaintiffs' medical and expert reports, was similarly inadmissible as unsworn and flawed. The NYTL report, the only certified report submitted, finding elevated levels of hydrogen chloride, was based only on air samples, taken a year after plaintiffs' alleged exposure, and concluded only that plaintiffs' symptoms *could have been* caused by exposure to hydrogen chloride, not that they were. Plaintiffs' contention that the temporal relationship between their acquisition of the bedding and the onset of their injuries, in conjunction with their scientific proof, was sufficient to defeat summary judgment is without merit, especially absent proof of causation (*see Heller v Shaw Indus., Inc.*, 167 F3d 146, 158-159 [3d Cir 1999]; *cf. Curtis v M&S Petroleum, Inc.*, 174 F3d 661, 670 [5th Cir 1999]). Concur—Marlow, J.P., Williams, Gonzalez, Catterson and McGuire, JJ.